UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:20 CR 83 |
| ) | |
| PARIS HILL ) | |

## OPINION and ORDER

### I. BACKGROUND

Defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (DE # 1.) Before the court is defendant's motion to dismiss the indictment on Second Amendment grounds in light of the Supreme Court's ruling in *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 597 U.S. 1 (2022). (DE # 21.) For the following reasons, the motion is denied.

### II. LEGAL STANDARD

The Federal Rules of Criminal Procedure provide that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

**III.    DISCUSSION**

In *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, the Supreme Court established a two-prong framework for analyzing whether a challenged firearm regulation violates the Second Amendment. 597 U.S. 1 (2022). First, *Bruen* instructs courts to determine whether the Second Amendment's plain text covers an individual's conduct. If it does, the conduct is "presumptively protect[ed]," and the government bears the burden of demonstrating that the challenged regulation "is consistent with the Nation's historical tradition of firearm regulation." *Bruen,* 142 S. Ct. at 2129–30. The present case requires analysis of only the second part of the framework, as the court assumes, *in arguendo*, that defendant's conduct is covered by the plain text of the Second Amendment. *United States v. Regalado,* No. 3:23CR42 DRL, 2023 WL 9054039, at *2 (N.D. Ind. Dec. 20, 2023) (Leichty, J.) ("Consistent with the wisdom of deciding constitutional questions on their narrowest ground, the court will assume the Second Amendment applies and proceed directly to the historical analysis.").

The Supreme Court has not addressed the constitutionality of Section 922(g)(1) after *Bruen*, nor has the Seventh Circuit. The circuits that *have* addressed the issue are split. *Compare United States v. Dubois,* 94 F.4th 1284, 1293 (11th Cir. 2024) (finding Section 922(g)(1) constitutional); *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023) (same); *Vincent v. Garland,* 80 F.4th 1197, 1201 (10th Cir. 2023) (same); *with Range v. Att'y Gen. United States of Am.,* 69 F.4th 96, 98–99, 106 (3d Cir. 2023) (finding Section 922(g)(1) unconstitutional). In this circuit, district courts have been grappling with the issue, with "most, but not all upholding the statute as constitutional." *United States v. Cherry,* No.

23-CR-30112-SMY, 2024 WL 379999, at *3 (S.D. Ill. Feb. 1, 2024) (collecting cases); *Regalado,* 2023 WL 9054039, at *2 (collecting cases).

The crux of defendant's challenge is that barring felons from owning firearms is not consistent with this nation's history of firearm regulation. It appears true that the historical record is "void of the disarmament of those convicted of crimes and felonies." *United States v. Vaughns,* No. 22-CR-00636, 2023 WL 8258575, at *5 (N.D. Ill. Nov. 29, 2023); *see also United States v. Williams,* 616 F.3d 685, 692 (7th Cir. 2010) ("the academic writing on the subject of whether felons were excluded from firearm possession at the time of the founding is 'inconclusive at best'"). However, *Bruen* requires "only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." 142 S. Ct. at 2133 (emphasis in original). In other words, "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*

Many district courts under the purview of the Seventh Circuit have relied upon Revolution-era laws dispossessing British loyalists of their firearms, as providing a proper historical analogue to Section 922(g)(1). This court concurs. It is beyond dispute that colonial legislatures disarmed British loyalists they feared would disregard the law and disturb the social order. *Vaughns,* 2023 WL 8258575, at *7 (collecting sources); *see e.g.,* 4 Journals of the Continental Congress 1774-1789, at 205 (1906) (resolution of Mar. 14, 1776); 5 The Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 479-84 (1886) (1776 Mass. law); 7 Records of the Colony of Rhode Island and Providence Plantations in New England 567 (1862) (1776 R.I. law); 1 The

3

Public Acts of the General Assembly of North Carolina 231 (1804) (1777 N.C. law); *see also United States v. Jackson,* 69 F.4th 495, 503 (8th Cir. 2023) (explaining "[i]n the era of the Revolutionary War, the Continental Congress, Massachusetts, Virginia, Pennsylvania, Rhode Island, North Carolina, and New Jersey prohibited possession of firearms by people who refused to declare an oath of loyalty.").

Defendant argues that these Revolution-era dispossession laws are not analogous to Section 922(g)(1) because the latter is a complete ban with only illusory exceptions in the form of pardons or expungement. (DE # 23 at 6.) In defendant's view, this is different than dispossession laws, the consequences of which could be avoided by swearing an oath to the United States. The court disagrees. Congress passed Section 922(g)(1) with knowledge of the existence of numerous exceptions to the law, such as pardons, expungement, or administrative relief via the Attorney General. 18 U.S.C. § 925(c). These exceptions demonstrate that Section 922(g)(1) imposes a burden on the right to bear arms comparable to the British-loyalist dispossession historical analogue. *Vaughns,* 2023 WL 8258575, at *7; *United States v. Anderson,* No. 22 CR 0594, 2023 WL 7531169, at *9 (N.D. Ill. Nov. 13, 2023) ("loyalty oath laws . . . are the strongest analogue to § 922(g)(1)"). Though not "historical twins," Section 922(g)(1) and British-loyalist disarmament laws are "historical analogues" sufficient for *Bruen* purposes. *See* 142 S. Ct. at 2133.

Defendant also urges the court to consider that his prior felonies of burglary and battery were not severe crimes. (DE # 21 at 12.) But this argument is misplaced. The regulation the court must examine under *Bruen* is *unlawfully possessing a firearm as a*

4

*felon*, not defendant's prior burglary and battery felonies themselves. As Judge Damon R. Leichty recently explained in his outstanding opinion on the constitutionality of Section 922(g)(1) under *Bruen*, a defendant's focus on the nature of his prior felonies "invites the court to wade into a classification process of the predicate offense that neither [*District of Columbia v. Heller,* 554 U.S. 570, 592 (2008)] nor *Bruen* has directed." *Regalado,* 2023 WL 9054039, at *9. Indeed, "[t]he court's proper lens is whether this statute—which regulates felons (as a category)—fits within our Nation's historical tradition, and it does." *Id.* As the Seventh Circuit has articulated, "Governments may keep firearms out of the hands of dangerous people who are apt to misuse them," *United States v. Holden*, 70 F.4th 1015, 1017 (7th Cir. 2023) (citing *Bruen*, 142 S. Ct. at 2131), including "the sort of person who cannot be trusted with guns." *Id.* at 1018. Defendant fits into this category, and the regulation of this category fits within our nation's historical tradition.[1]

---

[1]   Defendant urges the court to consider the reasoning of the district court in *United States v. Neal*, No. 20-CR-335, 2024 WL 833607 (N.D. Ill. Feb. 7, 2024). In that case, concluded that Section 922(g)(1) addresses the societal function of "combatting crime and recidivism" rather than "disarming individuals who, like felons, [were] untrustworthy adherents to the rule of law." 2024 WL 833607, at *7–8. However, this court agrees with the position articulated by Judge Jon DeGuilio in *United States v. Williams,* No. 2:23-CR-59 JD, 2024 WL 1528653, at *3 (N.D. Ind. Apr. 9, 2024). *Williams* explained that "[t]he fundamental characteristic defining someone as a criminal is the fact they did not adhere to the rule of law. So then, there is no reason to distinguish criminals from the broader group of those who are untrustworthy adherents to the rule of law or gradate such subgroups' protections under the Second Amendment. The Court recognizes it is possible that the Founders gradated the Second Amendment rights of untrustworthy adherents to the rule of law based on the nature of their untrustworthiness, creating subcategories about who were more untrustworthy and thus subject to more restrictions. In the Court's view, however, that is not the most persuasive interpretation for understanding the modern constraints of the Second Amendment."

Finally, it is worth noting that the Seventh Circuit recently voiced skepticism that *Bruen* is a proper vehicle for challenging the constitutionality of Section 922(g)(1) in *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024). In that case, the Seventh Circuit commented that *Bruen*-based challenges to Section 922(g)(1) are "hard to square" with previous Supreme Court holdings which all included language indicating that their holdings do not disturb prohibitions on the possession of firearms by felons. *Id.* This commentary, while not definitive, suggests that lower courts should proceed with caution when examining *Bruen's* effect on Section 922(g)(1). This court has attempted to heed that warning in making this decision today.

### IV.   CONCLUSION

For all of these reasons, the court finds Section 922(g)(1) constitutional, both on its face and as applied to defendant, so the motion to dismiss (DE # 21) is **DENIED.**

**SO ORDERED.**

Date: June 18, 2024

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT